Slip Op. 13 - 51

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - -x

DECKERS CORPORATION,                    :

            Plaintiff, :

    v.                                  : Court No. 02-00732

THE UNITED STATES,                      :

            Defendant. :

- - - - - - - - - - - - - - - - - - - -x

Opinion

[Upon cross-motions as to classi-
fication of certain *Teva*® sandals,
summary judgment for the defendant.]

                              Decided:  April 12, 2013


    Rode & Qualey (Patrick D. Gill, William J. Maloney and Eleanore Kelly-Kobayashi) for the plaintiff.

    Stuart F. Delery, Acting Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Marcella Powell); and Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection (Michael W. Heydrich), of counsel, for the defendant.


        AQUILINO, Senior Judge:  Pursuant to 28 U.S.C. §§ 1581(a) and 2631(a), the above-named plaintiff commenced Court No. 02-00674 to contest classification by the U.S. Customs Service, as it was then still known, of imported footwear sub nom. *Pretty Rugged*

*Sport Sandal, Terradactyl Sport Sandal*, and *Aquadactyl Sport Sandal*, which action was designated a test case within the meaning of USCIT Rule 84(a).  Pursuant to subsection (d) of that rule, a suspension calendar was established for many, arguably-contingent actions subsequently commenced by the plaintiff, including this one, Court No. 02-00732.

I

This court in its slip opinion 05-159, 29 CIT 1481, 414 F.Supp.2d 1252 (2005), filed in the test case, denied defendant's motion for summary judgment.  Following necessary trial on the merits, however, judgment entered, affirming the Customs classification of the foregoing merchandise and dismissing that action per slip opinion 07-136, 31 CIT 1367 (2007), aff'd, 532 F.3d 1312 (Fed.Cir. 2008).

A

Come now counsel for the defendant with a motion for summary judgment, seeking the same relief herein, dismissal of plaintiff's complaint.  That pleading states succinctly:

> . . . 9.   The imported merchandise invoiced as style Nos. 6401, 6601, 6408, 6653, 1360, 6818, 6771B and 6813 are valued at over $6.50 per pair but not over $12.00 per pair.

>       10.   The imported merchandise invoiced as style Nos. 6650, 6641, 6025, 6823 and 6648 are valued at over $12.00 per pair.
>
>       11.   The imported merchandise is athletic footwear.
>
>       12.   The imported articles are shoes.
>
>       13.   The imported style Nos. 6650 and 6648 are running shoes.
>
>       14.   The imported style Nos. 6650 and 6648 are training shoes.
>
>       15.   The imported style Nos. 6401, 6601, 6408, 6653, 6641, 6025, 6823, 1360, 6818, 6771B and 6813 are training shoes.
>
>       16.   The imported style Nos. set forth in paragraph 15 are *ejusdem generis* with the imported style Nos. 6650 and 6648.
>
>       17.   The imported articles are used for training and for athletic games or purposes.
>
>       18.   The imported merchandise in issue is properly classified under subheading 6404.11.80, HTSUS, or subheading 6401.11.90, HTSUS, depending on the value of the merchandise.

It recites in its paragraphs 7 and 8 the same precatory language of both preferred subheadings of the Harmonized Tariff Schedule of the United States (2001), to wit:

>      Footwear with outer soles of rubber, plastics, . . . and uppers of textile materials: Footwear with outer soles of rubber or plastics: . . . tennis shoes, basketball shoes, gym shoes, training shoes and the like: . . .  Other: . . . [.]

On its part, Customs opted for subheading 6404.19.35:

> Footwear with outer soles of rubber, plastics . . . and uppers of textile materials: Footwear with outer soles of rubber or plastics: Other: Footwear with open toes or open heels; . . . Other . . . [.]

At the time of its filing, USCIT Rule 56(h)(1) required defendant's motion to annex a short and concise statement of the material facts as to which counsel contend there is no genuine issue to be tried. Their statement is, in part, as follows:

> . . . 4. The Pretty Rugged sports sandal ("Pretty Rugged") has an upper composed of textile materials. . . .
>
> 5. The Pretty Rugged has a sole composed of rubber or plastic. . . .
>
> 6. The Pretty Rugged has open toes. . . .
>
> 7. The Pretty Rugged has open heels. . . .
>
> 8. The upper of the Pretty Rugged does not enclose the foot and ankle. . . .

Defendant's Statement of Undisputed Material Facts (citations omitted). It describes similarly the other models of *Teva®* sandals at issue herein, namely *Pretty Rugged Nylon* [see id., paras. 9-13], *Terradactyl* [see id., paras. 14-18], *Trail Wraptor* [see id., paras. 19-23], *Road Wraptor* [see id., paras. 24-28], *Ultimate Thong Guide* [see id., paras. 29-33], *Alp Pro* [see id., paras. 34-38], *Vector*

[see id., paras. 39-43], *Terra Fi* [see id., paras. 44-48], *Way Point Terra Fi* [see id., paras. 49-53], *Circuit Nylon Women's* [see id., paras. 54-58], and *Terra Fi Buckle* [see id., paras. 59-63].

The plaintiff has responded with a cross-motion for summary judgment, including a Rule 56(h) statement, agreeing "that there are no material facts as to which there exists a genuine issue to be tried and [that] the issues are amen[]able to resolution through dispositive motions."

> However, plaintiff submits that defendant's Statement of Material Facts 8, 13, 18, 22, 23, 27, 28, 33, 38, 42, 43, 48, 53, 58, and 63 . . . are inaccurate. Nevertheless, . . . these inaccuracies do not create a triable issue of fact because the inaccuracies are manifest from an examination of the samples themselves, Exhibits 19-31[,] and the testimony of plaintiff's potential witnesses in Exhibits 1, 32, 33, and 34.

Plaintiff's Statement of Undisputed Material Facts, pp. 1-2. It proceeds to explain away "these inaccuracies" [see id. at 2-3], concluding that they

> have no bearing on the ultimate issue in this case -- whether the Teva® Sports Sandals in issue are "training shoes."

Id. at 3. The plaintiff then "submits that the following additional undisputed facts exist in this case which are supportive of plaintiff's Cross-Motion for Summary Judgment:"

64. The Teva® Sports Sandals in issue are shoes. . . .

65. The Teva® Sports Sandals in issue are training shoes. . . .

66. The Teva® Sports Sandals have special features that enhance the foot's natural abilities with traction, cushioning and support. . . .

67. All of the Teva® Sports Sandals in issue are athletic footwear. . . .

68. The styles 6650 and 6648 Teva® Sports Sandals are running shoes. . . .

69. "Running shoes are shoes which are used for running, jogging and training." . . .

70. The fact that training shoes have openings or are not completely enclosed does not detract from their being training shoes if they otherwise qualify. . . .

71. Training shoes and athletic footwear in general are in a constant state of evolution. . . .

72. There is an evolution and huge movement in training shoes to lighter weight shoes and shoes which are more open. . . .

73. Jogging is a form of running. . . .

74. T.D. 93-88, footwear definitions published by Customs, equates training shoes with joggers. . . .

75. Training shoes describe a footwear category comprised of products with features intended to provide stability, traction, cushioning and support beyond the ability of the human foot alone and all of the Teva® Sports Sandals have these features. . . .

76. "[R]unning is both a fantastic form of training and a huge part of training." . . .

Court No. 02-00732                                                    Page 7

77. "It is implicit that a running sandal is a training sandal." . . .

78. Styles 6818, 6813, 6823, 6653, 6401, 6408, 1360, 6025, 6771-B, 6441, 6601, although not specifically designed as running shoes, are well suited for running and are for that reason training shoes[.] . . .

79. "Training shoes are shoes which are used in athletic training." . . .

80. A running shoe is designed specifically for the activity of running. . . .

81. A training shoe is not specific to any particular sport. . . .

82. A training shoe needs to be runnable. . . .

83. A running shoe can easily be used for training because a lot of training is running.  It is not necessary that a great training shoe becomes a great running shoe. . . .

84. Most training shoes do not have closed uppers; Most training shoes have meshes that are like screens -- specifically designed to allow as much ventilation as possible. . . .

85. The Teva® Sports Sandal removed the mesh, but kept the same frame structure of a training shoe. . . .

86. Most training shoes or running shoes have frame structures usually made of synthetic materials with screens or meshes to accommodate the most amount of ventilation. . . .

87. Breathability is important in training shoes and is key to avoiding moisture build-up inside the shoe. . . .

    88. The style 6025 is a walking shoe designed for walking which is also a training shoe because walking is something that is done for physical fitness; the style 6025 can also be run-in. . . .

    89. The Teva® Sport Sandals are marketed and advertised as training shoes. . . .

    90. All of the Teva® Sports Sandals in issue can be used for running and are runnable. . . .

                                    \*    \*    \*

    96. Teva® style 6653, Terra Fi, has been worn for running in competitive road racing. . . .

    97. Teva® style 6648, Trail Wraptor, has been worn by a competitor in a 135 mile running competition held in the Mojave Desert. . . .

                                    \*    \*    \*

    99. Teva® Sports Sandals are worn for training in gyms[.] . . .

Id. at 3-9.

B

In the interests of brevity, as indicated supra, the court has omitted plaintiff's citations in support of its foregoing averments, as well as those in toto numbered 91, 92, 93, 94, 95, 98, and 100. Whatever the proof presented herein in support of each of them, defendant's fundamental position is its response to plaintiff's paragraph 64, to wit:

> Admits that sandals in common parlance are "shoes," but avers that sport sandals are not "tennis shoes, basketball shoes, gym shoes, training shoes and the like" for purposes of the tariff. See Deckers

>      <u>Corporation v. United States</u>, 523 F.3d 1312, 1317-1318
>      (Fed.Cir. 2008).  Further avers that sandals are
>      differentiated from shoes in sporting goods stores.
>      Further avers that there are significant differences in
>      construction and use between a sport shoe and a sport
>      sandal. . . .

**Defendant's Response to Plaintiff's Statement of Undisputed Material Facts**, first page (citation omitted).  Indeed, upon comparison of the parties' competing presentations as to the facts involved, this court is unable to disagree that trial is unnecessary to resolve a material matter.  That is, the dispositive issue is a question of law that is susceptible to resolution by way of summary judgment.

This being the case, the court cannot read the cited decision of the Court of Appeals for the Federal Circuit, affirming slip opinion 07-136, <u>supra</u>, as providing a basis for the relief for which the plaintiff so skillfully prays herein.  That decision concluded that,

>      [b]ecause the sandals at issue have open toes and open
>      heels, and lack the features of the named exemplars of
>      6404.11.80, HTSUS, the imported goods are not
>      classifiable under that subheading, notwithstanding
>      their claimed status as athletic footwear.

532 F.3d at 1317.

>      . . . We agree with the Court of International Trade
>      that the Teva® Sandals are not the kind of shoes to
>      which subheading 6404.11.80 refers, for the same reasons
>      expressed in the *ejusdem generis* analysis.

                              *   *   *

>      The merchandise at issue in this case is properly
> classified under Subheading 6404.19.35, HTSUS, because
> the goods indisputably fit within the plain language of
> that unambiguous subheading.  Subheading 6404.11.80,
> HTSUS, in view of Note 2, does not provide any
> alternative basis for the sandals' classification as the
> imported goods are not "like" the enumerated exemplars
> of subheading 6404.11.80.

Id. at 1318.

Moreover, in their Motion to Designate Test Case and Suspend, filed in CIT No. 02-00674 in March 2004, counsel for the plaintiff represented that disposition of this action, if suspended under that test case, would be facilitated because

>      2.  Th[at] test case involves the same plaintiff, the
>      same defendant, the same class or kind of merchandise,
>      i.e., sports sandals, and the same claims.

That this representation was subsequently repeated by them in their motion to designate this action, Court No. 02-00732, a test case itself did not alter its essence under the controlling law at the time of entry into the United States of plaintiff's underlying goods, more-propitious types of athletic footwear.  31 CIT at 1373.  Perhaps some day, that law will catch up to them.  See, e.g., Proposed Test Method for the Administration of Additional U.S. Note 5 to Chapter 64, HTSUS, Concerning the Classification of Footwear with Textile Material on the Outer Sole, 47-14 Cust. B. & Dec. 5 (March 27, 2013).

II

In view of the foregoing, defendant's motion must be granted; summary judgment will enter accordingly.

Decided:   New York, New York
           April 12, 2013


                                          /s/   Thomas J. Aquilino, Jr.
                                                 Senior Judge

## J U D G M E N T

**UNITED STATES COURT OF INTERNATIONAL TRADE**

Thomas J. Aquilino, Jr., Senior Judge

- - - - - - - - - - - - - - - - - - -x

**DECKERS CORPORATION,**                    :

                         Plaintiff, :

          v.                         :   Court No. 02-00732

**THE UNITED STATES,**                     :

                         Defendant. :

- - - - - - - - - - - - - - - - - - -x

This test case within the meaning of USCIT Rule 84(a) having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now therefore, in conformity with said decision, it is

ORDERED, ADJUDGED and DECREED that plaintiff's cross-motion for summary judgment be, and it hereby is, denied; and it is further

ORDERED, ADJUDGED and DECREED that defendant's motion for summary judgment, affirming the decision of the United States Customs Service to classify the merchandise at issue under HTSUS subheading 6404.19.35 (2001), be, and it hereby is, granted; and it is further

Court No. 02-00732                                                    Page 2

     **ORDERED, ADJUDGED and DECREED** that this test case be, and it hereby is, dismissed.

Dated: New York, New York
       April 12, 2013

                                        /s/   Thomas J. Aquilino, Jr.
                                                Senior Judge